AO 106 (REV 4/10) Affidavit for Search Warrant

AUSA Aaron Bond, (312) 353-5300

FILED
10/24/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In the Matter of the Search of:

Case No. 25 CR 636

The gray 2013 Nissan Rogue SUV, bearing Illinois license plate DA 48589 and VIN JN8AS5MV5DW650452, Illinois, further described in Attachment A

Judge Georgia N. Alexakis

**UNDER SEAL**

# APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Hanna McLaughlin, a Special Agent of the Federal Bureau of Investigation, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

**See Attachment A**

located in the Northern District of Illinois, there is now concealed:

**See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is evidence and instrumentalities.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 111(a) and (b) | Forcibly impeding, intimidating, or interfering with a federal law enforcement officer. |

The application is based on these facts:

**See Attached Affidavit**,

Continued on the attached sheet.

*Hanna McLaughlin*
*Applicant's Signature*

HANNA MCLAUGHLIN, Special Agent
Federal Bureau of Investigation
*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: October 24, 2025

*Judge's signature*

City and State: Chicago, Illinois

GEORGIA N. ALEXAKIS, U.S. District Judge
*Printed name and title*

UNITED STATES DISTRICT COURT    )
     )
NORTHERN DISTRICT OF ILLINOIS    )

## **AFFIDAVIT**

I, Hanna McLaughlin, being duly sworn, state as follows:

1.    I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately August 2020.

2.    As part of my duties as an FBI Special Agent, I investigate criminal violations relating to domestic terrorism, including criminal violations including, but not limited to Title 18, United States Code, Sections 111, 231, 249, 373, 842, 922, 1361, 1505, 1512, 1752, 2102, 2251, 2252, 2703 and Title 26 United States Code, Section 5861. I have been trained in, and involved with, various methods criminal actors utilize in the realm of counterterrorism, with a focus on domestic terrorism matters. During my career as a Special Agent with the FBI, I have participated in multiple federal search and arrest warrants concerning the federal violations previously listed. I have participated in the execution of multiple federal search warrants.

3.    This affidavit is made in support of an application for a warrant to search a gray 2013 Nissan Rogue SUV, bearing Illinois license plate DA 48589, and VIN JN8AS5MV5DW650452, described further in Attachment A (the "**Subject Vehicle**"), for evidence and instrumentalities described further in Attachment B, concerning forcibly impeding, intimidating, or interfering with federal law

enforcement officers, in violation of Title 18, United States Code, Section 111(a) and (b) (the "**Subject Offense**").

4. The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence and instrumentalities of violations of Title 18, United States Code, Section 111(a) and (b), are located the **Subject Vehicle**.

## I. FACTS SUPPORTING PROBABLE CAUSE TO SEARCH

### A. Summary

5. On or about October 4, 2025, Border Patrol Agents ("BPAs") 1, 2, and 3 with United States Customs and Border Protection ("CBP") conducted an operation during which the BPAs acted as security detail while driving a silver Chevrolet Tahoe (the "CBP Vehicle"). While operating the CBP Vehicle and in the course of their official duties, the BPAs were followed by a convoy of civilian vehicles, including the **Subject Vehicle** driven by Marimar MARTINEZ and a black GMC Envoy (the "Ruiz Vehicle") driven by Anthony Ian Santos Ruiz. The convoy of civilian vehicles followed the BPAs closely and pursued the BPAs aggressively, culminating in MARTINEZ, in the **Subject Vehicle**, and Ruiz, in the Ruiz Vehicle, driving into and making contact

2

with the CBP Vehicle on both the driver's side and passenger's side, respectively, leading to a temporary loss of control of the CBP Vehicle.

6.      On October 9, 2025, a grand jury returned an indictment charging MARTINEZ and Ruiz each with one count of forcibly impeding, intimidating, and interfering with persons designated in Title 18, United States Code, Section 1114, namely, U.S. Customs and Border Protection Border Patrol Agents, employees of the United States, while they were engaged in and on account of the performance of their official duties, and such acts involved a deadly and dangerous weapon, to wit: a motor vehicle, in violation of Title 18 United States Code, Section 111(a) and (b). *See* 25 CR 636, Dkt. 22.

### B.      The Subject Vehicle and Ruiz Vehicle Strike the CBP Vehicle

7.      According to the BPAs, on or about October 4, 2025, the BPAs were tasked with operating as a mobile security detail for other CBP agents in other CBP vehicles. The BPAs were assigned the CBP Vehicle for purposes of the operation.

8.      According to the BPAs, BPA 1 was the driver of the CBP Vehicle.  BPA 2 sat in the rear seat on the driver's side of the CBP Vehicle, while BPA 3 sat in the rear seat on the passenger's side of the CBP Vehicle.

9.      According to the BPAs, their assigned area of operation on or about October 4, 2025, was Oak Lawn, Illinois. According to BPA 3, while operating the CBP Vehicle in or around Oak Lawn, multiple civilian vehicles began to follow the CBP Vehicle and vehicles driven by other CBP agents. According to BPA 3, many of

3

the civilian vehicles drove aggressively and erratically towards the CBP Vehicle, including by driving within inches of the CBP Vehicle, pulling up alongside both the passenger's and driver's side of the CBP Vehicle, and disobeying traffic laws, including running red lights and stop signs, driving in the wrong lane, and driving the wrong way down one-way streets in order to pursue the CBP Vehicles.

10. According to the BPAs, BPA 1 drove the CBP Vehicle away from vehicles driven by other CBP agents to draw the pursuing civilian vehicles away from the other CBP agents, which ultimately resulted in the BPAs driving the CBP Vehicle northbound on Kedzie Avenue, in Chicago. According to a Facebook live video recovered from MARTINEZ's phone, prior to the BPAs turning onto Kedzie, the BPAs in their CBP Vehicle were followed by the **Subject Vehicle**, whose driver regularly and loudly referred to the BPAs as "la migra."[1] According to POD camera footage, the **Subject Vehicle** was also observed immediately behind and following the CBP vehicle as the CBP vehicle traveled northbound at the intersection of Kedzie and 47th Street, in Chicago.

11. According to the BPAs, while driving northbound on Kedzie Avenue, the civilian vehicles continued to pursue the CBP Vehicle aggressively. According to BPAs 2 and 3, while operating the CBP Vehicle in approximately the area of 42nd Street and Kedzie Avenue to approximately 39th Street and Kedzie, multiple civilian

---

[1] Based on my training and experience, I know that "la migra" is a common slang term used to refer to immigration enforcement personnel.

vehicles attempted to box-in the CBP Vehicle. According to video security footage from Business A, the **Subject Vehicle** drove up parallel to and next to the driver's side of the CBP Vehicle, while the Ruiz Vehicle drove up near the rear passenger's side of the CBP Vehicle.

12. According to the body-worn camera of BPA 3, video security footage from Business A near the intersection of 39th and Kedzie, and evidence photographs taken by law enforcement, the **Subject Vehicle** and the CBP Vehicle made contact with each other. A moment thereafter, the Ruiz Vehicle made contact with the rear right quadrant of the CBP Vehicle. According to body-worn camera footage collected by BPA 3, the contact between the **Subject Vehicle** and the CBP Vehicle and the CBP Vehicle and the Ruiz Vehicle happened at approximately 10:29 a.m.[2] According to photos taken of the CBP Vehicle and the **Subject Vehicle**, the vehicles both sustained damage consistent with a collision:

---

[2] The BPAs were each equipped with body-worn cameras on or about October 4, 2025, but only BPA 3's camera was activated at the time of the incident. Additionally, the timestamp on BPA 3's body-worn camera was approximately one our ahead.

**Damage to the Driver's Side of the CBP Vehicle**

 

**Damage to the Front Passenger Side of the Subject Vehicle**



13.   According to video security footage from Business A, after the **Subject Vehicle** and the Ruiz Vehicle made physical contact with the CBP Vehicle, the **Subject Vehicle** and the Ruiz Vehicles remained southbound of the CBP Vehicle.

14. According to video security footage from Business A and body-worn camera footage from BPA 3, after being struck by the **Subject Vehicle** and the Ruiz Vehicle, BPA 1 stopped the CBP Vehicle, and the BPAs exited the CBP Vehicle.

15. According to BPA 1 and BPA 2, moments after exiting the CBP Vehicle, the **Subject Vehicle** drove northbound in the direction of BPA 1. According to the audio of BPA 3's body-worn camera, BPA 1 proceeded to fire approximately five shots from his service weapon at the driver of the **Subject Vehicle**. According to BPAs 2 and 3, the **Subject Vehicle** proceeded to flee northbound on Kedzie Avenue.

### C. Martinez was the Driver of the Subject Vehicle

16. According to a responding paramedic, the **Subject Vehicle** was discovered by paramedics at a repair shop near 35th Street and California Avenue, approximately one mile northeast from the location of the collisions. The driver of the **Subject Vehicle**, later identified as MARTINEZ, was taken from this location, by ambulance, to a hospital where, according to a hospital nurse, MARTINEZ was treated for gunshot wounds.

## II.     CONCLUSION

17.     Based on the above information, I respectfully submit that there is probable cause to believe that the **Subject Offense** has been committed, and that evidence and instrumentalities relating to this criminal conduct, as further described in Attachment B, will be found in the **Subject Vehicle**, as further described in Attachment A. I therefore respectfully request that this Court issue a search warrant for gray 2013 gray Nissan Rogue SUV, bearing Illinois license plate DA 48589, and VIN  JN8AS5MV5DW650452,  more  particularly  described  in  Attachment  A, authorizing the seizure of the items described in Attachment B.

FURTHER AFFIANT SAYETH NOT.

_Hanna McLaughlin_
Hanna McLaughlin
Special Agent
Federal Bureau of Investigation

Sworn to and affirmed by telephone 24th day of October, 2025

_____
Honorable GEORGIA N. ALEXAKIS
United States District Judge

8

## ATTACHMENT A

A 2013 gray Nissan Rogue SUV, bearing Illinois license plate DA 48589 and VIN JN8AS5MV5DW650452, currently located at FBI Chicago Field Office, 2111 W. Roosevelt Rd., Chicago, IL 60608 (the "**Subject Vehicle**").

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

Evidence and instrumentalities concerning violation of Title 18, United States Code, Section 111(a) and (b), as follows:

1.      Any and all documents, papers, or records that identify the occupant(s) of the **Subject Vehicle** the morning of, during, and immediately following the **Subject Offense**.

2.      Any infotainment system capable of connecting to devices via Bluetooth that contains connection information the morning of, during, and immediately following the **Subject Offense**.

3.      Any Event Data Recorder ("EDR") system capable of recording technical data and occupant information immediately before, during, and immediately after a vehicle crash.

4.      Any GPS devices and tracking information for the **Subject Vehicle** from the morning of, during, and immediately following the **Subject Offense**.

5.      Any biological material, including but not limited to blood.

2