# EXHIBIT I

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 25 CR 610 |
| v. | ) | |
| | ) | U.S. Magistrate Judge Gabriel A. Fuentes |
| DANA BRIGGS | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the magistrate judge is the government's motion (D.E. 39) to dismiss the criminal information (D.E. 9) filed on October 7, 2025, and charging Defendant Dana Briggs with a misdemeanor violation of 18 U.S.C. § 111(a) stemming from events on the night of September 27, 2025, at the U.S. Department of Homeland Security's immigration detention facility in Broadview, Illinois. The government presented this motion at hearing today. The Court entered an order granting the motion, after a brief colloquy with counsel. (D.E. 40.) This order provides the Court's further basis for the dismissal under Rule 48(a) of the Federal Rules of Criminal Procedure. Ordinarily, a court need not explain the basis for granting a dismissal motion filed by the government in a criminal case per Rule 48(a), and ordinarily, a court might do little more than inquire into the basis for the motion so that the reasons supporting the dismissal are more than conclusory. *United States v. Palomares*, 119 F.3d 556, 558 (7th Cir. 1997).

But these are not ordinary times at the Everett McKinley Dirksen United States Courthouse. So a brief additional explanation is necessary, and the Court also is acting upon Briggs's request to dismiss the information with prejudice. The government has clarified for the Court, after today's dismissal motion hearing, that it does not object to a dismissal with prejudice (D.E. 40). This order will address that issue as well.

In early September 2025, the government initiated in this judicial district an immigration enforcement operation it dubbed "Operation Midway Blitz." As a part of this specific operation, which lasted from about September 5, 2025, to about November 12, 2025, the government made numerous civil immigration arrests in this judicial district, as enforcement of the Immigration and Nationality Act ("INA") is civil, and not criminal. *Arizona v. United States*, 567 U.S. 387, 396 (2012). As is evident from ongoing litigation in this district about the manner in which the U.S. Immigration & Customs Enforcement ("ICE") and U.S. Customs & Border Patrol ("CBP") agents effect these arrests, the agents might use a form of administrative warrant to arrest – civilly, and for purposes of enforcing the INA by initiating deportation proceedings – persons as to whom there is probable cause for the agents to believe the person is not lawfully in the country,[1] or they are authorized to make warrantless arrests on that ground *plus* probable cause to believe that if not arrested without a warrant, the person is likely to escape before a warrant can be obtained. *See Castañon Nava v. Dep't of Homeland Security*, No. 18-cv-3757, 2025 WL 2842146, at *3 (N.D. Ill. Oct. 7, 2025); 8 U.S.C. §§ 1226(a), 1357(a). During the course of those operations, according to the Court's review of the criminal docket in this district, the government also made arrests or obtained arrest warrants alleging criminal violations of 8 U.S.C. § 1326(a), which criminalizes the unlawful re-entry into the United States after deportation. In addition, the government arrested persons for violation of Section 111, known as the offense of "assault on a federal officer," in connection with various incidents in and around the district where government agents alleged that

---

[1] According to some media reports, the persons detained in the government's recent stepped-up immigration enforcement efforts have included U.S. citizens. Nicole Foy, *We Found That More Than 170 U.S. Citizens Have Been Held by Immigration Agents. They've Been Kicked, Dragged and Detained for Days*, Pro Publica (Oct. 16, 2025), https://www.propublica.org/article/immigration-dhs-american-citizens-arrested-detained-against-will.

the arrested persons interfered with their operations or assaulted them. The Court focuses its discussion today on several of those cases, including that of Mr. Briggs, at the DHS detention facility in Broadview, Illinois.[2]

On September 27, 2025, protests at the Broadview detention center resulted in federal arrests and charges against five persons: (1) Mazur,[3] in Case No. 25 CR 607; (2) Ray Collins, in Case No. 25 CR 608; (3) Jocelyne Robledo, also in Case No. 25 CR 608; (4) Paul Ivery, in Case No. 25 CR 609; and (5) Briggs, in Case No. 25 CR 610 (the instant case). In court filings in this district, the government has characterized the events at Broadview as an event that necessitated deployment of the National Guard to Chicago, and the district court responded as follows:

> On September 27, CBP informed Broadview Police that they should prepare for an increase in the use of chemical agents and ICE activity in Broadview, and that it was "going to be a shitshow." Doc. 13-5 at 10. That day, Broadview Police monitored the "small crowd of quiet protestors" who were outside the ICE Processing Center and watched as federal officials formed a line and marched north up the street, pushing the crowd to another location. *Id.* Federal officials dismantled a water and snack tent that protestors had been using and later that evening deployed tear gas, pepper spray, and pepper balls at protestors. *Id.* at 10-11. On September 28, Illinois was asked to voluntarily send Illinois National Guard troops to protect federal personnel and property at the ICE Processing Center in Broadview. Doc. 13-2 at 4. Governor Pritzker declined that request, concluding that "there were no past or present current circumstances necessitating it." *Id.*

> * * *

> The Court therefore must make a credibility assessment as to which version of the facts should be believed. While the Court does not doubt that there have been acts of vandalism, civil disobedience, and even assaults on federal agents, *the Court cannot conclude that Defendants' declarations are reliable*. Two of Defendants' declarations [asserting the need for the National Guard deployment] refer to arrests

---

[2] To be precise, the Court will refer to the Broadview site as a "detention facility," not a "processing center." The Court takes judicial notice that arrested persons, including Mr. Briggs, were taken inside the facility and detained there. The character of such detentions at the Broadview detention facility also is the subject of ongoing litigation in this district in *Gonzalez v. Noem*, No. 25 C 13323, 2025 WL 3170784 (N.D. Ill. Nov. 5, 2025).

[3] Mazur was charged under the name "Hubert Mazur." Mazur, though counsel, later communicated that Mazur goes by the name "Luci Mazur."

made on September 27, 2025 of individuals who were carrying weapons and assaulting federal agents. *But neither declaration discloses that federal grand juries have refused to return an indictment against ... those individuals*, which equates to a finding of lack of probable cause that any crime occurred. *See United States v. Collins, Robledo*, No. 25-cr-608, Doc. 26 (N.D. Ill. Oct. 7, 2025) …. *In addition to demonstrating a potential lack of candor by these affiants, it also calls into question their ability to accurately assess the facts.*

*Illinois v. Trump*. No. 25-cv-12174. 2025 WL 2886645, at *3, 5 (N.D. Ill. Oct. 10, 2025) (emphasis added).

Examining more closely the five September 27 Broadview criminal arrest cases, all of which came before the undersigned magistrate judge, the Court notes the following facts:

1) The initial complaints charged four (Collins, Robledo, Ivery, and Briggs) of the foregoing five persons with felony violations of Section 111(a). Only the complaint against Mazur was filed as a misdemeanor.

2) With today's dismissal of the Briggs criminal information, none of these cases remains pending today – all have been dismissed.

3) As the docket entries reflect in all five of the cases, the undersigned magistrate judge obtained a sworn statement from the affiants in each affidavit, at the time of complaint issuance, that not only were the affidavit allegations true, but that video evidence of the encounters existed, that the affiants had reviewed the video evidence, and that the video evidence corroborated the version of events set forth in the affidavits. *Mazur* (D.E. 11); *Collins/Robledo* (D.E. 26); *Ivery* (D.E. 13); and *Briggs* (D.E. 14). Yet:

   a. In *Mazur*, the government promptly dismissed the misdemeanor criminal complaint upon its disclosure that after the arrest, the government reviewed additional body-worn camera footage of the encounter and then decided to drop the charges on October 7, 2025. *Mazur* (D.E. 11). As this case was charged as a misdemeanor, it appears not to have been presented to a federal grand jury.

   b. In *Collins/Robledo*, the government promptly dismissed the felony complaint on October 8, 2025, upon its disclosure that on October 7, the federal grand jury returned a "no bill" against these persons and thus refused to indict them on the felony Section 111 charge. *Collins/Robledo* (D.E. 26). During the dismissal hearing, the prosecutor referred to a third recent "no bill" case that was not identified further on the record.

   c. In *Ivery*, the government promptly dismissed the felony complaint on October 9, 2025, stating a basis on the record that had to do with Mr. Ivery's medical or mental

4

condition. *Ivery* (D.E. 13). With the case dismissed, the government does not appear to have had to present it to a grand jury.

    d. In *Briggs*, the instant case, while the government was litigating its opposition to a proposed injunction against the National Guard deployment in *Illinois v. Trump*, and citing to the Broadview arrests, the government left the Briggs prosecution as the only remaining September 27 Broadview Section 111 prosecution by reducing the charge to a misdemeanor charged by information on October 7. *Briggs* (D.E. 9.)

4) Each of the five persons arrested on September 27 from Broadview on Section 111 charges endured official detention (or other government restrictions on their liberty) after their arrests.

    a. Mazur, Robledo, and Briggs were released on September 29 under orders setting release conditions; this was following Monday after their Saturday night arrests in Broadview.

    b. Ivery's case proceeded to a detention hearing, which caused his official detention to be extended to October 1, when the Court released Ivery on conditions.

    c. Collins's case also proceeded to a detention hearing and an appeal of the Court's detention order, so his official detention continued to October 2, when he was released on conditions.

    d. The orders setting conditions of release of these defendants typically subjected them to pretrial supervision or imposed other limits on their freedom. Collins was placed under a curfew and ordered not to go within 500 feet of the Broadview detention facility. *Collins* (D.E. 21). Briggs was released under a $10,000 unsecured bond and a restriction limiting his travel to the Northern District of Illinois with permission of Pretrial Services. *Briggs* (D.E. 6).

5) The government produced certain video evidence in discovery in the Briggs matter, and the Court reviewed it. *Id.* (D.E. 14.) In dismissing the case on government motion today, the Court noted that it had relied in part on its review of the video, including a body-worn camera video that had been restricted from public disclosure under a protective order. The Court lifted that restriction as to the relevant portion of that video today. Viewers of the available videos may reach their own conclusions about it and about this prosecution.

6) On the night before the dismissal motion, the government and the parties in the Briggs matter filed their proposed witness lists. The defense list (D.E. 38) disclosed its witnesses would include CBP Chief Gregory Bovino, who is seen on one of the evidentiary videos leading other agents out of the Broadview enclosure toward the protesters in the street,

telling them to step back. With the matter now dismissed, the Court has no way of knowing whether Bovino ever would have been called as a witness. Notably, in another recent matter in this district, the district court found, in an order filed today, that "[m]ost tellingly, Bovino admitted in his deposition that he lied multiple times about the events that occurred in Little Village that prompted him to throw tear gas at protesters." *Chicago Headline Club v. Noem*, No. 25 C 12173 (N.D. Ill. Nov. 20, 2025) (D.E. 281).

Other Section 111 prosecutions in the district have contained echoes of, or similarities to, the now-dismissed prosecutions of Briggs and the four others arrested at Broadview on September 27. In *United States v. Cole Sheridan*, No. 25 CR 634, the government sought and was granted an extension of time to obtain a grand jury indictment, only days before the time to indict was to expire. (D.E. 18, 20.) Only days later, the government moved to dismiss the case. *Id.* (D.E. 23.) Only today, the government is moving to dismiss the Section 111 prosecutions of Marimar Martinez and Anthony Ian Santos Ruiz. *United States v. Martinez, Ruiz*, No. 26 CR 636 (D.E. 69), after both of those defendants experienced detention for several days (D.E. 3, 5, 8, 11.)

Setting aside the extraordinary judicial determinations that DHS sworn declarations are unreliable, that the candor of its agents is open to question, and that sworn testimony of its CBP chief contained knowing falsehoods, the Court closes with a focus on the prosecutions of Briggs and the other five Broadview arrestees from September 27. These five prosecutions were highly unusual in this district for several reasons. A "no bill" vote by a grand jury was virtually unheard of in this district until Operation Midway Blitz. The last and only one the Court can remember was from the early part of this century. Then, in the past two months, at least three have occurred. In two of those (Collins and Robledo), the Court obtained sworn confirmation that video backed up the affiants' allegations in the felony complaints – yet the grand jury refused to find probable cause. That is a sobering event for a magistrate judge – i.e., this Court – who signed those complaints and thus made a finding that the complaint allegations *did* establish probable cause. In a third (Mazur), the Court had obtained the same confirmation, only to learn that the government

was dismissing the complaint because it had looked at *more* video afterward and concluded that its evidence was insufficient. Finally, in this case, the matter was set for a December 8 criminal trial and was proceeding to trial before the government dismissed, on the day after the defense said it would seek to call Bovino as a witness.

Importantly, nothing in this order should be construed as scolding the government for dismissing in these cases. Dismissing appears to be the responsible thing for the government to have done, in light of the government's judgment and discretion. But the Court cannot help but note just how unusual and possibly unprecedented it is for the U.S. Attorney's Office in this district to charge so hastily that it either could not obtain the indictment in the grand jury or was forced to dismiss upon a conclusion that the case is not provable, in repeated cases of a similar nature. Federal arrest brings federal detention, even for a short time. It brings the need to obtain counsel, to appear at court hearings, to answer the charges (as Briggs did in this case, pleading not guilty), and to prepare for trial (as Briggs also has had to do in this case). Being charged with a federal felony, even if it is later reduced to a misdemeanor, is no walk in the park. And any responsible federal prosecutor knows this. Any responsible federal prosecutor knows that federal charges, or any actions by the United States Attorney directed at the citizenry, must be undertaken with the utmost care. Lest we forget:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones.

*Berger v. United States,* 295 U.S. 78, 88 (1935).

7

Today the Court stops short of concluding that the government struck any foul blows. But in charging Briggs, it sought to strike hard blows. It swung and missed – multiple times. The common order of criminal prosecutions in the United States does not include the dismissal of unsupportable or unfair charges when the government maintained in all earnestness in filing them that they were supportable, and they were fair. When a rash of federal prosecutions like that of Briggs failed to result in indictments or resulted in dismissed charges recently in the District of Columbia, a federal judge there called it "unprecedented prosecutorial action," while the persons charged "have been detained for days despite the Government having no reason to detain them …." *United States v. Beidleman*, No. 25-270, 20205 WL 2803850, at *1 (D.D.C. Oct. 1, 2025). Where the government has sought to recharge some defendants in these recent "unprecedented" cases in the District of Columbia, courts have refused to go along: "Arresting, charging, dismissing, re-charging, dismissing again, recharging again in another court, and dismissing again: this roller coaster is anything but normal." *United States v. Butler*, No. 1:25-cr-02566 (ZMF), 2025 WL 2835678, at *2 (D.D.C. Oct. 3, 2025). The *Butler* court dismissed the charges with prejudice in that circumstance. The *Butler* roller coaster now threatens to find its way to this district in the Briggs matter. Though it may not have yet arrived, or in precisely the same way, the Court will ensure that it does not. The Court dismisses the Briggs information with prejudice, for all of the reasons stated above, and notably without objection by the government.[4] The Court appreciates the government's actions in today doing ultimately what it determined to be the right

---

[4] The Court regrets that the world of the magistrate judge does not offer more time to compose scholarly, detailed memorandum opinions explaining the intricacies of its rulings. The Court learned of the government dismissal motion in this case this morning. There is value in a contemporaneous explanation of the Court's action, for better public understanding of a judge's role, and here, of the unusual circumstances this and the other Broadview arrest cases involve. A same-day opinion will have to suffice.

thing. Doing the right thing has been a mantra of the Chicago U.S. Attorney's Office for generations.

Let it remain so.


**SO ORDERED.**

ENTER:

GABRIEL A. FUENTES
United States Magistrate Judge

**Date: November 20, 2025**

9