**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

UNITED STATES OF AMERICA,

     Plaintiff,

v.

 

MARIMAR MARTINEZ,

     Defendant.

25 CR 636

Judge Georgia N. Alexakis

## MOTION TO MODIFY THE COURT'S PROTECTIVE ORDER

Defendant, **Marimar Martinez**, by and through her attorneys, **Cheronis & Parente LLC**, respectfully requests that the Court modify the Protective Order previously entered on October 7, 2025 (R. 20)[1], and to allow for Ms. Martinez and her counsel to disclose case materials in their possession to the public.[2] In support thereof, Ms. Martinez states as follows:

### I.    Introduction

Ms. Martinez requests that the Protective Order in this case be modified to allow for the disclosure of case materials which are in the possession of herself and her counsel, to the public. She is compelled to make this request for two reasons. First, in order to defend herself from a regrettable and unyielding tide of

---

[1] The Protective Order was entered by the Magistrate Judge in this case. Counsel is filing this Motion with the District Court since the District Court handled the motions filed by the press relating to the protective order. That said, Ms. Martinez consents to proceeding before the Magistrate Judge on this issue.

[2] Counsel for Ms. Martinez reached out to counsel for the Government regarding its position on this Motion, and whether they would agree to modify the Protective Order, but was told they will need more time to consider their position.

misinformation from the federal government regarding her case. While the United States voluntarily dismissed its formal prosecution of her with prejudice, as discussed below, government officials continue to prosecute Ms. Martinez's character in the court of public opinion. The ability to disclose the evidence in this case is paramount to Ms. Martinez's ability to combat the continuing harm being done to her reputation.

Second, based on recent events in Minneapolis, Minnesota, involving the execution of two U.S. citizens who were engaged in similar peaceful protests as Ms. Martinez at the time of their killings, Ms. Martinez believes certain information disclosed in her case, and currently subject to the Protective Order, would be useful for both the public and elected officials to know regarding how DHS responds in cases where their agents use deadly force against U.S. citizens.

At the outset of the United States' prosecution, this Court granted the United States' unopposed motion for a Protective Order. R. 20. The basis for the request was that:

> The discovery to be provided by the government in this case includes sensitive information, whose unrestricted dissemination could adversely affect law enforcement interests and the privacy interests of third parties.

R.2.

Between that time and the government's November 20, 2025, voluntary dismissal of its indictment with prejudice, Ms. Martinez came into the possession of body camera footage, photographs, electronic communications, and other evidentiary materials related to the encounter between herself and Border Patrol agents on October 4, 2025, that gave rise to her brief prosecution.

The government dismissed its prosecution of Ms. Martinez and co-defendant Anthony Ian Santos Ruiz, on November 20, 2025. R. 69. At the time of the dismissal, it was Ms. Martinez's view that dismissal would allow her to "go back to her normal life." R.74-3, p. 7:21-23. Regretfully, that did not end up being the case. What happened to Ms. Martinez and the truth about the events of October 4, 2025, as well as what is happening with the killing of two other individuals by DHS agents have become matters of strong public interest and debate. The requested modification of the Protective Order is necessary to allow Ms. Martinez to ensure that debate is based in fact.

## II.  Argument

The public has a presumptive right to access judicial proceedings and records. *Grove Fresh Distribs. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994); *U.S. v. Edwards*, 672 F.2d 1289, 1292 (7th Cir.1982)(there is a "strong presumption in support of the common law right to inspect and copy judicial records"). Such right to access continues even after the case is concluded since the terms of the Protective Order survive the conclusion of the case. *See, Blum v. Merrill Lynch Pierce Fenner & Smith Inc.,* 712 F.3d 1349 (9th Cir. 2013) (noting "[i]n 1993, the Third Circuit recognized 'the growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated.'"); *Doe v. Amar*, 2023 U.S. Dist. LEXIS 122367 (C.D. Ill. July 17, 2023) (noting in the context of an intervention motion that "[c]ourts routinely find motions

3

to intervene to be timely 'even where a non-party intervenes years after the litigation concluded to challenge a protective order.").

The four factors to determine whether modification of a protective order is proper are well-recognized: (1) the nature of the protective order; (2) the foreseeability of the need to modify the order at the time it was entered into; (3) the parties' reliance on the protective order; and (4) whether good cause exists to modify the protective order. *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 566 (7th Cir. 2018). All four factors compel modification of the Protective Order in this matter.

When applying the first factor, courts assess the breadth of the protective order. "Umbrella" orders that "designate[] all discovery as protected" are "disfavored." *Bayer AG & Miles, Inc. v. Barr Lab'ys, Inc.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995)(cited favorably, *Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006)). The Protective Order at issue here is precisely the type of disfavored "umbrella" order. It bars disclosure of "all of the materials provided by the United States in preparation for, or in connection with, any stage of the proceedings in this case." R. 20. Because such orders are presumptively disfavored, the party opposing modification will "generally" have the burden to establish "good cause" for disallowing modification. *Id*. No good cause to maintain the Protective Order exists here. The case has been dismissed with prejudice and other than the Government continue to attach Ms. Martinez's character, they have closed the case into her and Mr. Ruiz. Moreover, the terms of the protective order extend even after the conclusion of the case and the

4

"materials may not be disseminated or used in connection with any other matter without further order of the Court" which we are now seeking. R. 20, at 2.

The second factor also indicates modification is proper. At the time Ms. Martinez acquiesced to entry of the order, it was not foreseeable that the government would continue to endorse the same allegations that it abandoned during this prosecution. Despite voluntarily dismissing the charges against Ms. Martinez, high ranking government officials continue to maintain that the sum and substance of the facts alleged in Ms. Martinez's indictment, are accurate.

To this day, Ms. Martinez is described as a "domestic terrorist" who "rammed federal agents with [her] vehicle[]" on the website of the Department of Homeland Security. (Ex. 1, 1-22-26 Screenshot from Department of Homeland Security website, https://www.dhs.gov/news/2025/10/04/update-dhs-deploys-special-operations-after-multiple-violent-attacks-federal-law). Similarly, the Director of the FBI, Kash Patel, maintains a post on "X" (formerly Twitter) where he "reposted" a claim stating:

> BREAKING: This is the video where Marimar Martinez, aka La Maggie, rammed a white DHS vehicle who had their emergency lights on. Another DHS black SUV then attempts to ram Marimar's SUV from behind. One DHS agent is on the passenger side firing shots. Democrats are insane.

(Ex. 2, 1-22-26 Screenshot from FBI Director Kash Patel's X account, https://x.com/FBIDirectorKash/status/1975001981828931752?lang=en). The accompanying video that Director Patel claims shows Ms. Martinez "ramm[ing] a white DHS vehicle" is of an entirely unrelated incident. Neither Ms. Martinez nor her vehicle appears in the video and has no apparent connection to the events depicted.

The FBI director's mistake was even acknowledged by Assistant Secretary of the Department of Homeland Security, Tricia McLaughlin, in her own post on X. (Ex. 3, 1-23-26 Screenshot from Tricia McLaughlin's X account, https://x.com/TriciaOhio/status/1974942178716610568). Remarkably, Assistant Secretary McLaughlin's post nonetheless still implies that Ms. Martinez, whom the Assistant Secretary refers to as "'La Maggie'" committed "ANOTHER [different] vehicular assault" against DHS officers. (Ex. 3). The post remains viewable online.

Additionally, on January 25, 2026, Department of Homeland Security, Tricia McLaughlin issued a statement to 60 Minutes about the incident with Ms. Martinez stating, "On October 4, border patrol law enforcement officers were ambushed by domestic terrorists that rammed federal agents with their vehicles." https://www.cbsnews.com/news/new-video-contradicts-border-patrol-account-of-chicago-shooting-lawyer-says-60-minutes.

In short, there was no way to foresee the counter-factual public relations war that would be waged against Ms. Maritnez at the time the Protective Order was entered into.

The third factor assesses the "extent to which a party resisting modification relied on the protective order in affording access to discovered materials." *Bayer*., 162 F.R.D. at 467. This also cuts towards modifying the Protective Order. The scope of case materials provided to Ms. Martinez is narrow and was required by the Federal Rules of Criminal Procedure. Ms. Martinez only received basic investigatory

information which the government would be required to provide her in any prosecution. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Under the final factor, courts assess whether "good cause" exists to modify the order. This factor overwhelmingly indicates that modification is proper. As explained above, the ability to disseminate the factual evidence about the events of October 4 and DHS's response to Ms. Martinez's shooting is of the utmost importance to Ms. Martinez, and frankly to the entire country at this tragic time in our nation's history. Ms. Martinez has no convictions nor pending criminal charges but is still publicly degraded as a "domestic terrorist" by her own Government.

The Protective Order has become an albatross around her neck and keeps the entire country in the dark about how DHS responds to lethal force incidents by their agents which have now unfortunately become a weekly occurrence. Instead of protecting against improper disclosures, it is a prophylactic to countering a pernicious misinformation campaign mounted by the United States. The government should not be permitted to wage this campaign against Ms. Martinez while actively suppressing the objective evidence that she could use to counteract those efforts.

A striking example of why good cause exists to modify the order is that the Government's false narrative surrounding this case has reached all the way to the United States Supreme Court. In a recent Supreme Court decision, Justice Samuel Alito relied on the Government's briefing repeating the false narratives surrounding this case and wrote:

> In a widely publicized event on October 4, a federal vehicle carrying Border Patrol agents was boxed in on a public road by 10 civilian vehicles, and 2 of

those vehicles rammed the Government vehicle. As the agents exited their vehicle, one of the civilian vehicles was driven directly at an agent, forcing the agent to fire in self-defense.

*Trump v. Illinois*, No. 25A443, 607 U.S. ___ (Dec. 23, 2025), at 8.

Justice Alito's reliance on the Government's statements regarding this case, without attorneys for the State of Illinois and City of Chicago having the ability to demonstrate the false nature of these statements given the restrictive Protective Order, demonstrates the dangerousness of the Government's actions here. By putting out their one-sided narrative and then keeping the objective evidence sealed pursuant to the Protective Order they are forcing the public, and Supreme Court Justices, to have to rely solely on the Government's inaccurate version of events. This Court has the power to shed light on the truth of what happened on October 4.

For the foregoing reasons, Ms. Martinez, through counsel, respectfully requests the Court modify the Protective Order to allow her and her counsel, to disclose case materials in their possession, to the public.

Respectfully Submitted,

/s/ Christopher V. Parente
Christopher V. Parente

**Cheronis & Parente**
140 South Dearborn Street, Suite 404
Chicago, Illinois 60603
(312) 663-4644
cparente@cheronislaw.com

8